The STATE OF CALIFORNIA and the California Coastal Zone Conservation Commission, an agency of the State of California, Plaintiffs,

v.

Thomas S. KLEPPE, Secretary of the United States Department of Interior, Individually and in his official capacity, et al., Defendants.

No. CV 76–3406–ALS.

United States District Court, C. D. California.

May 2, 1977.

---

Evelle J. Younger, Atty. Gen., State of Cal., by R. H. Connett, Asst. Atty. Gen.; Roderick E. Walston, Donatas Januta, Deputy Attys. Gen., San. Francisco, Cal., for plaintiffs.

Irwin L. Schroeder, Jr., and William M. Cohen, Attys., U. S. Dept. of Justice, Washington, D. C., and Donald J. Merriman, Asst. U. S. Atty., Los Angeles, Cal., for Federal defendants Kleppe, Frizzell, Doremus, Davis, Coleman and Tweedt.

McCutchen, Black, Verleger & Shea by Philip K. Verleger, Betty Jane Kirwan and Sharon F. Rubalcava, Los Angeles, Cal., for defendants Exxon Corp., Exxon Pipeline Co. of Cal., Standard Oil Co. of Cal. and Shell Oil Co.

Pillsbury, Madison & Sutro by Donald E. Peterson, San Francisco, Cal., for Standard Oil Co. of Cal.

HAUK, District Judge.

This matter has now come on for hearing in the above-entitled Court on Friday, April 29, 1977, at 9:30 a. m., upon plaintiffs' "AFFIDAVIT OF DISQUALIFICATION OF HONORABLE A. ANDREW HAUK" and "CERTIFICATE OF COUNSEL," both filed this morning, together with various comments, arguments and discussion between counsel and the Court today, as well as last Monday and Tuesday, April 25 and 26, 1977.

At the outset we should note that while the case was filed on October 29, 1976, and has been before the Court on several pretrial motions and arguments, as well as numerous and voluminous pleadings and papers in connection with plaintiffs' Motion for Preliminary Injunction and defendants' Motions for Summary Judgment and Dismissal, and while the Court has engaged diligently in study and analysis of all of the various documents filed here in connection with the said motions, the Court did not become actively aware of any possible grounds for disqualification of the Court in this case until the morning of Monday, April 25, 1977. At that time, in going over some documents permissibly filed late in connection with said motion, the Court noted the Affidavit of Richard E. Hammond on behalf of plaintiffs—said Hammond having been at one time legal counsel on the staff of plaintiff California Coastal Zone Conservation Commission—in which Affidavit Mr. Hammond indicated two things which the Court had not previously known, or at least had not consciously considered:

1. That, as stated in Mr. Hammond's Affidavit, particularly at pages 13 and 14, any decision in this case before the Court will be a dominant if not prime catalyst with respect to the development of oil production and financial well-being of other lessees in the Santa Barbara Channel, and

2. At Page 14 of the Hammond Affidavit, that Exxon shares ownership with Chevron (designated Operator), Union and Atlantic Richfield in the proposed Santa Cruz unit north of Santa Crux Island.

Having noted these things on Monday morning, April 25, 1977, the Court brought to the attention of all counsel the fact that the Court was at one time, from 1952 to 1964, litigation counsel for Union Oil Company of California and has possessed and still does possess several hundred shares of Union Oil Company Common Stock, · acquired through stock option or incentive plans from Union Oil Company during the course of the Court's association with Union as litigation counsel.

Further, on Monday, April 25, 1977, the Court indicated to all counsel that because of these facts, both in the Hammond Affidavit and as related by the Court, each of the parties should be given an opportunity to file appropriate pleadings under 28 U.S.C. 144[1] by way of a "timely and suffi-

cient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party . . ." which "shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time."

It was further pointed out to counsel that under Section 144, the affidavit "shall be accompanied by a certificate of counsel of record stating that it is made in good faith."

Then, of course, the Court mentioned to counsel that 28 U.S.C. 455[2] which corre-

---

1. § 144. *Bias or prejudice of judge*

Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. § 144

2. § 455. *Disqualification of justice, judge, magistrate, or referee in bankruptcy*

(a) Any justice, judge, magistrate, or referee in bankruptcy of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;

(3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;

(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

(i) Is a party to the proceeding, or an officer, director, or trustee of a party;

(ii) Is acting as a lawyer in the proceeding;

(iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

(iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

(c) A judge should inform .himself about his personal and fiduciary financial interests, and make a reasonable effort to inform himself about the personal financial interests of his spouse and minor children residing in his household.

(d) For the purposes of this section the following words or phrases shall have the meaning indicated:

(1) "proceeding" includes· pretrial, trial, appellate review, or other stages of litigation;

(2) the degree of relationship is calculated according .to the civil law system;

(3) "fiduciary" includes such relationships as executor, administrator, trustee, and guardian;

sponds in all pertinent parts, if not identically and virtually word-for-word, with the

(4) "financial interest" means ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant in the affairs of a party, except that:

(i) Ownership in a mutual or common investment fund that holds securities is not a "financial interest" in such securities unless the judge participates in the management of the fund;

(ii) An office in an educational, religious, charitable, fraternal, or civic organization is not a "financial interest" in securities held by the organization;

(iii) The proprietary interest of a policyholder in a mutual insurance company, of a depositor in a mutual savings association, or a similar proprietary interest, is a "financial interest" in the organization only if the outcome of the proceeding could substantially affect the value of the interest;

(iv) Ownership of government securities is a "financial interest" in the issuer only if the outcome of the proceeding could substantially affect the value of the securities.

(e) No justice, judge, magistrate, or referee in bankruptcy shall accept from the parties to the proceeding a waiver of any ground for disqualification enumerated in subsection (b). Where the ground for disqualification arises only under subsection (a), waiver may be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification.

28 U.S.C. § 455

**3.** Canon 3      Code of Judicial Conduct

---

C. *Disqualification*

(1) A judge shall disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

(a) He has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(b) he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;

(c) he knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

(d) he or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

(i) is a party to the proceeding, or an officer, director, or trustee of a party;

Code of Judicial Conduct, Canon 3C,[3] sets forth the various grounds for possible dis-

(ii) is acting as a lawyer in the proceeding.

*COMMENTARY*

*The fact that a lawyer in a proceeding is affiliated with a law firm with which a lawyer-relative of the judge is affiliated does not of itself disqualify the judge. Under appropriate circumstances, the fact that "his impartiality might reasonably be questioned" under Canon 3C(1), or that the lawyer-relative is known by the judge to have an interest in the law firm that could be "substantially affected by the outcome of the proceeding" under Canon 3C(1)(d)(iii) may require his disqualification.*

(iii) is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

(iv) is to the judge's knowledge likely to be a material witness in the proceeding;

(e) he has served in governmental employment and in such capacity participated as counsel, advisor, or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy.

(2) A judge should inform himself about his personal and fiduciary financial interest, and make a reasonable effort to inform himself about the personal financial interests of his spouse and minor children residing in his household.

(3) For the purposes of this section:

(a) The degree of relationship is calculated according to the civil law system;

*COMMENTARY*

*According to the civil law system, the third degree of relationship test would, for example, disqualify the judge if his or his spouse's father, grandfather, uncle, brother, or niece's husband were a party or lawyer in the proceeding, but would not disqualify him if a cousin were a party or lawyer in the proceeding.*

(b) "Fiduciary" includes such relationships as executor, administrator, trustee, and guardian;

(c) "financial interest" means ownership of a legal or equitable interest, however small, or a relationship as director, advisor, or other active participant in the affairs of a party, except that:

(i) ownership in a mutual or common investment fund that holds securities is not a "financial interest" in such securities unless the judge participates in the management of the fund;

(ii) an office in an education, religious, charitable, fraternal, or civic organization is not a "financial interest" in securities held by the organization;

(iii) the proprietary interest of a policy holder in a mutual insurance company, of a depositor in a mutual savings association, or a

qualification, including the vague and understandably disturbing ground in 28 U.S.C. 455(a) and Code of Judicial Conduct, 3C(1), to the effect that a Judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." In the two codes there are additional sections setting forth in more detail specific grounds which are or might be encompassed within that broadly vague and amorphous ground, including the judge's having acted as an attorney for a party interested in the matter, and the judge's ownership of some financial interest, "however small." 28 U.S.C. 455(b)(4) and (d)(4), Code of Judicial Conduct, Canon 3C(1)(c), 3C(2) and 3C(3)(c).

After this colloquy with counsel, the Court granted additional time in which to file any such affidavit of disqualification to and including April 29, 1977, at which time the Court set the matter for further hearing.

Now, as heretofore indicated, the plaintiffs have filed an affidavit of disqualification, executed by one Joseph E. Bodovitz, Executive Director of the plaintiff California Coastal Zone Conservation Commission, accompanied by the "good faith" certificate of one of plaintiffs' counsel, Donatas Januta, Esq.

## FINDINGS AND CONCLUSIONS

■ Since the plaintiffs' Affidavit and Certificate are based upon 28 U.S.C. 144 and 455 and Code of Judicial Conduct, Canon 3C, we are required to examine them to determine if they meet the tests required by the Code sections and Canon, namely, those of timeliness and legal sufficiency. If they do, then the factual allegations contained in the Affidavit *must* be taken as true and the Court has no power or authority to contest in any way whatsoever the necessary acceptance of truthfulness of the facts alleged, even though the Court may

> similar proprietary interest, is a "financial interest" in the organization only if the outcome of the proceeding could substantially affect the value of the interest;
> (iv) ownership of government securities is a "financial interest" in the issuer only if the outcome of the proceeding could substantially affect the value of the securities.

be aware of facts which would indicate clearly the falsity of any such allegations. *Berger v. United States,* 255 U.S. 22, 33, 41 S.Ct. 230, 65 L.Ed. 481 (1921); *Botts v. United States,* 413 F.2d 41 (9th Cir. 1969); *United States v. Tropiano,* 418 F.2d 1069 (2d Cir. 1969); *Lyons v. United States,* 325 F.2d 370 (9th Cir. 1963), cert. den. 377 U.S. 969, 84 S.Ct. 1650, 12 L.Ed.2d 738 (1964). *See also: United States v. Zarowitz,* 326 F.Supp. 90, 91 (C.D.Cal.1971), *United States v. Zerilli,* 328 F.Supp. 706, 707 (C.D.Cal. 1971), and *Spires et al., v. Hearst,* 420 F.Supp. 304, 306–307 (C.D.Cal.1976). *Cf.: Mavis v. Commercial Carriers, Inc.,* 408 F.Supp. 55, 58 (C.D.Cal.1975).

While perhaps not essential, it does seem to us appropriate, that we should now affirm that the Judge herein does not have, nor did he ever have, any personal bias or prejudice in the slightest degree for or against any of the parties to the case, cause and proceeding herein, and more particularly, does not now have and never did have any such personal bias or prejudice in the slightest degree against any of the plaintiffs herein, singly or collectively. Nor has the Judge ever knowingly or unknowingly given any cause for allegations of any such alleged personal bias or prejudice, or belief therein or suspicion thereof.

■ While it might be argued with some possible justification that the plaintiffs' Affidavit and Certificate are not "timely" within the meaning of 28 U.S.C. 144, since not filed until today, April 29, 1977, whereas the action herein was filed on October 29, 1976, nevertheless it appears conclusive and the Court so finds that the allegations of the Affidavit sufficiently set forth legal "timeliness." Moreover, the Court of its own knowledge finds that herein the Affidavit and the Certificate were timely for the reasons set out in the preliminary remarks to these Findings, Conclusions and

> (d) "proceeding" includes pretrial, trial, appellate review, or other stages of litigation.
> D. (This provision which permitted a remittal of disqualification was deleted from the Code by the Judicial Conference in March 1975. Since that date a remittal of disqualification is not permitted under any circumstances.)
> Code of Judicial Conduct, Cannon 3C

Order. There is no certainty that can be verified that the Court informed counsel on either side prior to the date of last Monday, April 25, 1977, that the Court held or holds several hundred shares of stock in Union Oil Company. Nor was the Court actively cognizant that any decision here will vitally affect Union Oil's fortunes, and therefore possibly affect the financial interests of the Judge herein, until last Monday, April 25, 1977, because it was not until that time that the Court discovered or at least become knowledgeably aware of the fact that Union not only has some lease interests in the Santa Barbara Channel close by the Santa Ynez Unit involved in these proceedings, but also has some partnership interests and royalty overrides in connection with Exxon and Exxon's leases as well as similar Exxon interests in Union Oil leases in the Santa Barbara Channel. Therefore it appears clear to the Court and the Court so finds that the Affidavit and Certificate have been timely filed.

Now, the next question is whether or not the Affidavit and Certificate are "legally sufficient" within the meaning of the same statutory sections and Canon. Certainly they appear to be and the Court so finds. They are in proper form; they assert facts and not just conclusions; and so, in line with the cases the Court has previously cited, they are legally sufficient. The only question left is whether facts are alleged which require the Judge to disqualify himself under 28 U.S.C. 455 and Code of Judicial Conduct, Canon 3C.

The Affidavit and Certificate which are attached hereto as an Appendix, show without doubt that the case, cause and proceeding here before the Court involves issues of great public significance and import. Moreover, the Court can take judicial notice of this and so finds.

It is further alleged that it is the belief of the affiant, Mr. Bodovitz, that members of the public may reasonably question the impartiality of the Judge to preside in this action for the reasons set forth thereinafter as well as because of alleged financial interest in the subject matter by way of the Judge's stock ownership in Union Oil, whose fortunes might be affected by any decision rendered herein, for better or for worse, with respect to Union's leases in the Santa Barbara Channel and by reason of its connections with Exxon in some partnerships and royalty overrides as well as with respect to any and all leases affecting Union's interest in the Santa Barbara Channel, since it is further alleged that Exxon has approximately 64% of the known oil and gas reserves in the Channel. These facts that are set forth in the Affidavit the Court cannot question under the law, and the Court must and does accept them as true.

The Court finds no fault with the truth of the allegations set forth in the Affidavit, except the Court does question somewhat the purport, although perhaps not permitted to do so legally, of the allegation that the public might reasonably question its impartiality. And yet the Court does not question even that too vigorously, because in light of the facts alleged, it is possible that somebody in the public—whoever the "public" is, we are not sure, but perhaps somebody not connected with the case, at any rate—might reasonably question the Court's impartiality to preside over this case. Then there are other grounds and reasons set forth in the remaining paragraphs of the Affidavit (pp. 2 to 6). Briefly stated, they appear to be that not only did the Judge act as litigation counsel for Union Oil during the period indicated, 1952 to 1964, but on occasion he had reviewed and examined oil and gas leases for Union Oil; that while the Judge does not recall reviewing any specific leases in the Santa Barbara Channel, he does recall some of the names that are listed on the map which was Exhibit A to the Hammond Affidavit, which names seemed familiar, as the Judge so indicated last Monday, April 25, 1977; and that the Judge does own several hundred shares of Union Oil stock.

Going on further, the Affidavit alleges that while Union Oil is not a party here, the action here will directly affect the fortunes and affairs of Union Oil, because as set forth in the Bodovitz Affidavit, Exxon has an interest of some 64% of the known oil

and gas reserves; that if Exxon does not utilize a pipeline as requested or sought by the plaintiffs here, but is able to tanker oil, it would set perhaps an unhappy precedent from the plaintiffs' point of view, and might thereafter make it impossible to require Union Oil or any other oil company to utilize pipelines instead of tankering; that Union's interests in the Santa Barbara Channel consist of ownership of some 17 oil and gas leases, fully or partially, including one lease from the United States Government and three leases from the State of California in their entirety, and some 12 joint interests with other oil companies, including Exxon in leases from the United States and one from the State of California, all set forth in official government records and documents; that Union has a further 12½% override royalty interest in a presently nonproductive lease in the Santa Ynez Unit before the Court here; that there are a number of units that are prospective or possible units next in line for future development in which both Union and Exxon hold some interests; that Union has some interests in marine terminals in that area as well as oil drilling platforms, one of which is still in operation, and the other of which is being installed and being outfitted; and finally that a so-called "Joint Government-Industry Study Group" in connection with the proceedings before the Court has indicated that if, ultimately, it is held that a pipeline is the alternative to be followed rather than tankering, an existing Union Oil pipeline might be utilized for part of the pipeline route.

Taking all of these allegations together, it seems to the Court that the Judge would be remiss in not taking as true the substance of the allegations in the Bodovitz Affidavit. Moreover, we might add that we must take them as true and do and so find.

■ The Court notes that Mr. Bodovitz himself at least seems convinced that the Judge's impartiality might reasonably be questioned and that is enough for the Court because all parties agree with the Court that the judiciary should not only be impartial, but always appear impartial. Perhaps

that is one of the reasons that counsel for the defendants, both the private defendants —Exxon, Standard and Shell—and the Federal governmental defendants, through their counsel, have stated to the Court they would not interpose any objection to the Affidavit for Disqualification under our District Court Local Rule 3(f)(2). This failure to oppose the Affidavit for Disqualification is indeed very strong support for the granting of the relief sought in the Affidavit, to wit, disqualification.

Finally, the Court should mention this: That 28 U.S.C. 455, and particularly 455(a), has been in all material respects identically enacted as Canon 3C(1) of the Code of Judicial Conduct. The other sections of 28 U.S.C. 455 have been similarly adopted, virtually verbatim, in the Code of Judicial Conduct, which was adopted and promulgated by the United States Judicial Conference at its April 5–6, 1973 Session, Conference Report, 1973, pp. 9 to 11; as amended at its September 14–17, 1973 Session, Conference Report, 1973, p. 52; at its March 7–8, 1974 semi-annual Session, Conference Report, 1974, p. 17, and at its March 6–7, 1975, Session, Conference Report, 1975, pp. 12–13.

■ We mention this virtual adoption by the Code of Judicial Conduct of the elements in 28 U.S.C. 455, because while 28 U.S.C. 455(e) provides that a judge may waive or accept waiver, we should say, from counsel of the ground for disqualification arising under Subsection (a), which is Code of Judicial Conduct, Canon 3C(1)—that is, a judge should disqualify himself whenever his impartiality might reasonably be questioned—such waiver is not permitted with respect to the various items under Subsection (b) of 28 U.S.C. 455, such as stock ownership, financial interest, and so forth. Moreover, while 28 U.S.C. does permit waiver with respect to Subsection (a) and denies it with respect to Subsection (b) of 28 U.S.C. 455, the Code of Judicial Conduct Canon 3C was amended in that aspect, that is, the waiver aspect, by a new Canon 3D which was enacted in 1975 by the Judicial Conference of the United States, deleting the prior 3D section which permitted the

same opportunity for waiver that is permitted by 28 U.S.C. 455(e). It follows now, necessarily, that if the Court is to follow the Code of Judicial Conduct, it cannot accept a waiver of any disqualifying matter, whether it be under 28 U.S.C. 455(a) or (b), or whether it be under Code of Judicial Conduct Canon 3C, or otherwise.

■ The ultimate finding and conclusion, must be and is therefore, that legally and factually the undersigned Judge must disqualify himself under 28 U.S.C. 144, 28 U.S.C. 455 and Canon 3C of the Code of Judicial Conduct, as amended to date.

■ One caveat perhaps should be added that the Court's Findings and Conclusions of the truth of the facts alleged and stated in the Affidavit of Mr. Bodovitz, Appendix hereto attached, are compelled and mandated by the United States Code, the Code of Judicial Ethics, their sections and Canon, and the cases decided thereunder, all as hereinabove mentioned. Of course, they do not constitute any findings or conclusions with respect to the *actual* facts and law governing the matters involved in the case, cause and proceeding herein.

### ORDER

NOW, THEREFORE, IT IS HEREBY ORDERED:

1. That the undersigned Judge does hereby disqualify and recuse himself from any and all further matters in the within case, cause and proceeding, pursuant to 28 U.S.C. 455 and Canon 3C of the Code of Judicial Conduct, as amended to date, and pursuant, of course, also, to the Affidavit and Certificate filed herein by the plaintiffs;

2. That the within case, cause and proceeding be and the same hereby is transferred and reassigned by the Court to the Chief Judge of our District, the Honorable Albert Lee Stephens, Jr., verbal approval having first been obtained and the Chief Judge's approval to be noted hereon, in accordance with the applicable Rules and Orders of this Court; and

3. That the Clerk serve copies of these Findings, Conclusions and Order forthwith by United States mail on counsel for all parties appearing in this case, cause and proceeding.

DATED: April 29, 1977
s/ A. Andrew Hauk
A. ANDREW HAUK
UNITED STATES DISTRICT JUDGE

APPROVED AND ACCEPTED:
s/ Albert Lee Stephens, Jr.
ALBERT LEE STEPHENS, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Appendix to follow.

APPENDIX

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

THE STATE OF CALIFORNIA and THE CALIFORNIA COASTAL ZONE CONSERVATION COMMISSION, an agency of the State of California,

Plaintiffs,

v.

THOMAS S. KLEPPE, Secretary of the United States Department of Interior, etc., et al.,

Defendants.

NO. 76–3406 AAH

AFFIDAVIT OF DISQUALIFICATION OF HONORABLE A. ANDREW HAUK

STATE OF CALIFORNIA } ss:

COUNTY OF SAN FRANCISCO }

Joseph E. Bodovitz, being duly sworn, deposes and says:

I

1. He is the Executive Director of the California Coastal Commission, which is the successor to the California Coastal Zone Conservation Commission. Said Joseph E. Bodovitz was also the Executive Director of the California Coastal Zone Conservation Commission at all times relevant hereto. He is authorized to make this affidavit on behalf of the plaintiffs in this action.

2. Said Joseph E. Bodovitz reasonably questions the impartiality of the Honorable A. Andrew Hauk in presiding over this action, for the reasons and on the facts set forth hereinafter.

3. Additionally, the herein action involves issues of great public significance and import. It is necessary to maintain and assure the public's confidence in the functioning of its government, in the decisions that the various branches of the Federal and State governments make, and in the procedures that are used to arrive at those decisions. Said Joseph E. Bodovitz states that it is his true opinion and belief that members of the public may reasonably question the impartiality of the Honorable A. Andrew Hauk to preside over this action, for the reasons and on the facts set forth hereinafter.

4. Said Joseph E. Bodovitz further states that the Honorable A. Andrew Hauk has a financial interest in the subject matter in controversy in this action.

II

5. Said Joseph E. Bodovitz is informed and believes that the Honorable A. Andrew Hauk, in open court proceedings on April 25 and 26, 1977, disclosed, with counsel for all parties hereto being present, the following facts:

a. That for approximately a twelve-year period preceding his appointment to the bench in 1964, said Honorable A. Andrew Hauk was employed by Union Oil Company as their attorney.

b. That said employment on occasion involved the review and examination of oil and gas leases for Union Oil Company.

c. That although the Honorable A. Andrew Hauk does not recall having reviewed any specific leases in the Santa Barbara Channel for Union Oil Company, he stated that the place names, indicated on Exhibit "A" to the affidavit of Richard E. Hammond filed heretofore herein, where oil and gas leases of Union Oil Company exist "seem familiar."

d. That the Honorable A. Andrew Hauk presently owns "several hundred" shares of Union Oil Company common stock which were acquired through stock option plans from Union Oil Company during the course of his employment with Union Oil Company.

### III

6. Although Union Oil Company is not a party to this action, the outcome of this action will directly affect the fortunes and affairs of Union Oil Company for the reasons set forth hereinafter.

7. As the affidavit of Richard E. Hammond filed heretofore herein states, the State of California and its agencies are seeking to compel not only the oil companies which are parties to this action, but all oil companies who have oil and gas interests in the Santa Barbara Channel to transport their oil by land pipeline rather than by the use of tankers in the Channel. As more fully set forth in the affidavit of Richard E. Hammond, because Exxon Corporation, the lead defendant in this action, has an interest in up to *64 percent* of the known reserves in the Channel, the outcome of this action will directly affect the fortunes and affairs of Union Oil Company, and all other oil companies with oil and gas interests in the Santa Barbara Channel. Without the participation in a pipeline of Exxon's oil involved in this litigation, it will be extremely difficult and perhaps impossible to require Union Oil Company or any other oil company with interests in the Channel to use a pipeline instead of tankers.

### IV

8. Union Oil Company's present interests in the Santa Barbara Channel include the following:

a. Union Oil Company presently has ownership interests in a total of seventeen (17) oil and gas leases in the Santa Barbara Channel area. Union Oil Company owns outright in the Channel one oil lease from the United States government and three oil leases from the State of California. Additionally, Union Oil Company has ownership interests in the Santa Barbara Channel jointly with other oil companies, including Exxon, in twelve oil leases from the United States and one oil lease from the State of California. All these interests are set forth in current official government records and documents. I am further informed that on April 28, 1977, counsel for Exxon Corporation advised the California Attorney General that Union Oil Company has a twelve and one half percent (12½%) over-ride royalty interest in one presently non-productive lease in the Santa Ynez Unit.

b. Some of the above leases are included in two "units" in the Santa Barbara Channel which have initial development plans presently under submission to the United States Geological Survey (U.S.G.S.) and are next in line to be developed into producing units: the Santa Clara Unit and the Hueneme Unit. Exxon also owns an interest in the Santa Clara Unit. Another unit, the Pitas Point Unit is presently intended to be the third forthcoming unit to be developed and some of Union Oil Company leases are in that unit.

c. Union Oil Company owns and operates two offshore marine terminals in the Santa Barbara Channel area, one at Point Conception, and the other at the mouth of the Ventura River.

d. Union Oil Company is the operator of, and has an ownership interest in the following three platforms in the Dos Quadros Field in the Santa Barbara Channel: Platforms A and B, which are in operation, and Platform C, which has been installed and is presently being outfitted. Union Oil Company also has an ownership interest in the onshore Mobil-Rincon Oil processing facility which processes oil from the Dos Quadros Field.

e. Finally, under the existing joint government/industry study group sponsored by Santa Barbara County to study feasible land pipeline alternatives for transporting all of the Santa Barbara Channel oil, if a land pipeline is ultimately used, one of the alternatives under consideration is to require that existing Union Oil Company pipelines be utilized for part of the proposed pipeline route.

Dated: April 28, 1977.

s/ Joseph E. Bodovitz

JOSEPH E. BODOVITZ

Affiant

Donatas Januta certifies:

1. That he is a Deputy Attorney General for the State of California and is counsel of record for the plaintiffs in this action;

2. That he is familiar with the Affidavit of Joseph E. Bodovitz made and filed to attain the disqualification and recusal of the Honorable A. Andrew Hauk under Title 28, sections 144 and 455, U.S.C., and under Canon 3 C of the Code of Judicial Ethics;

3. That he is familiar with the contents of said Affidavit and the reasons it is made and filed in this action and states that said Affidavit is and was made in good faith so as to obtain the proper purposes set forth in the above referenced sections of U.S.C. and the Code of Judicial Ethics;

4. That on April 26, 1977, the Honorable A. Andrew Hauk, in open court with counsel for all parties present granted plaintiffs leave until April 29, 1977, to file such an Affidavit. That counsel for all defendants thereupon stipulated in open court that in the event plaintiffs did file such an Affidavit defendants would not oppose it or the purposes sought to be obtained by it;

5. That this Certificate is made to accompany said Affidavit for recusal and disqualification and is made to fulfill the express requirements of Title 28, Section 144 U.S.C.

Dated: April 28, 1977.

s/ Donatas Januta

DONATAS JANUTA

