ROETTGER, District Judge.
 

 THIS CAUSE is before the court on a pleading styled “Verified Motion to Disqualify”, filed by defendant John Joseph Cerrella, and certified by his attorney, Stephen J. Finta, as made in good faith. The pleading seeks this court’s recusal pursuant to 28 U.S.C. §§ 144, 455.
 

 Stripped to its bare bones, defendant’s contention is that the court should disqualify itself from hearing defendant’s prospec
 
 *1368
 
 tive post-conviction motions because defendant feels the trial judge may believe defendant is trying to kill him.
 

 Although the court denies any personal bias or prejudice in past rulings regarding Mr. Cerrella, the trial judge has reason to believe that not only has defendant Cerrella expressed intentions to murder this judge but after the rulings apparently has let a “contract” to effect that objective.
 

 Although the motion is legally insufficient to meet the requirements of 28 U.S.C. § 144, the court finds under 28 U.S.C. § 455(a) that its impartiality “might reasonably be questioned” and will disqualify itself from hearing further matters involving Mr. Cerrella.
 

 The question remains whether a defendant can achieve recusal by threatening, at the minimum, the life of the trial judge in his case and thereafter still enjoy the benefit of section 455(a).
 

 THE TRIAL
 

 Defendant John Joseph Cerrella, a/k/a Johnny “Sideburns,” and his co-defendant, Thomas Joseph Chiantese, a/k/a Tommy “C”, were indicted on May 13, 1975, on two counts involving a scheme to extort money. The court granted a judgment of acquittal to both men on the second count under 18 U.S.C. § 1510, but defendants were convicted of the Hobbs Act extortion count, 18 U.S.C. § 1951, by a jury on Sept. 4, 1975.
 

 During the trial, at which the undersigned presided, the prosecution presented an overwhelming case of strong-arm extortion. By threats of physical violence, defendant and his co-defendant tried to force the operator of a successful parking-lot concession at a large Fort Lauderdale supper club to make them one-third partners. The concession operator had no desire to sell and, of course, he was to receive no consideration for the one-third interest sought by defendants.
 

 The parking-lot concession operator went to the police and for subsequent meetings had a radio transmitter hidden on his person; consequently, the jury had the benefit of hearing the extortion by tapes as well as by the victim’s testimony.
 

 Upon hearing the testimony, the jurors reacted with the most shocked facial expressions this court has seen in any case.
 

 Sentence was imposed immediately after conviction (as permitted by the Rules of Criminal Procedure in effect at that time) because the blatant criminal conduct revealed at the trial precluded any need for a pre-sentence investigation. The court notes this case was the only one in which this trial judge found a pre-sentence investigation to be unnecessary. The Court of Appeals specifically rejected defendant’s contention that declining to order a pre-sentence investigation was reversible error.
 
 United States v. Chiantese,
 
 582 F.2d 974, 981 (5th Cir. 1978). Mr. Cerrella was sentenced to 16 years; his co-defendant to 13.
 

 The media covered both arrest and trial with stories linking the two defendants to organized crime, some of which are included as exhibits to defendant’s motion to disqualify.
 

 POST-SENTENCING MATTERS ■
 

 The defendants’ convictions were reversed on appeal,
 
 United States v. Chiantese,
 
 546 F.2d 135 (5th Cir. 1977), but rehearing en banc was granted; the full panel remanded to the original three-judge panel after vacating part of its reversal, 560 F.2d 1244 (5th Cir. 1977). The original panel then affirmed the conviction, 582 F.2d 974 (5th Cir. 1978). Certiorari was denied by the United States Supreme Court, 441 U.S. 922, 99 S.Ct. 2030, 60 L.Ed.2d 395 (1979).
 

 Defendant Cerrella made two motions for reduction of sentence during 1979, both of which were denied. In September of 1980, he filed a motion for correction of sentence, which was denied by order dated October 3, 1980.
 

 A few weeks after the denial of Mr. Cerrella’s motion for correction of sentence, law enforcement officers informed the court that defendant Cerrella had placed a contract with certain hit men to have the
 
 *1369
 
 trial judge killed. The trial judge was put under around-the-clock protection and security by the United States Marshals Service immediately; that protection has been in effect from that day forward.
 

 In the spring of 1981, Mr. Cerrella’s co-defendant, Mr. Chiantese, filed a motion for correction of sentence, which the court denied. Apparently, Mr. Chiantese is not linked to the threat.
 

 Mr. Cerrella’s motion to disqualify alleges that “approximately on or about the month of March, 1981, and continuing thereafter,” the Department of Justice’s Strike Force “did investigate an alleged
 
 ‘contract’
 
 or
 
 ‘hit’
 
 that the defendant allegedly put on Judge Roettger for $300,000.” (emphasis and quotation marks in original). The defendant further asserts that the investigation was “made known” to the media and that defendant’s counsel attempted to “ascertain the date of these alleged threats” from law enforcement agents, but that the Strike Force “refused to divulge these dates, which upon information and belief coincide not only with defendant’s 2255 motion, but also the defendant’s co-defendant’s 2255 motion; which Judge Roettger denied.”
 

 The court notes these matters only to emphasize that Mr. Cerrella’s various motions were all denied before the court was aware of any threats; the only matters that have come before the court since then are Mr. Chiantese’s motion and the motion that is the subject of this opinion.
 

 MOTION BEFORE THE COURT
 

 Mr. Cerrella’s motion consists of 25 numbered paragraphs. The first six paragraphs recite the chronology of the case and note that “the local newspapers were riddled with articles about the defendant and his being a member of the mafia.” Paragraph number five asserts that “at the inception of trial, the defendant’s counsel, Alan Weinstein, Esquire, attempted to alleviate any question the court had about this question, by raising the matter to the Honorable Judge Roettger. Judge Roettger responded that Mr. Weinstein had told him the same thing about another of his clients and a couple of days later the court found out he had connections to organized crime.”
 

 Paragraphs seven through eighteen of the motion are subtitled “Defendant’s Contention and His Legal Dilemma” and assert that he wishes to attack the length of the sentence and the fact that it was imposed without a pre-sentence investigation through “the methodology of extraordinary writs.” The subsection continues that the trial judge’s actions regarding sentencing and post-conviction motions “leave no doubt as to the existence of an extra-judicial bias or prejudice against the defendant.” The allegations regarding the contract, recited above, are included in this section, as well. Paragraph seventeen reads “[t]hat under the existing factual scenario, and in view of prior comments that Judge Roettger has made about the defendant (see exhibits attached hereto), uncharacteristically [sic], the Honorable Judge Roettger should disqualify himself under 28 U.S.C. secs. 144, 455.”
 

 The exhibits to which paragraph seventeen refers were filed with the court a month after the motion itself, after repeated calls from the court’s staff. They consist of six stories gleaned from local newspapers during the time of trial, sentencing and appeal. Although there is no date on one of the stories, and the date on another is blurred, it is apparent that none of the clippings dates from more recently than June of 1977. The undersigned is mentioned by name in only two of the stories, one of which merely states the sentences imposed. The other, written the day after conviction, quotes the undersigned as saying a pre-sentence investigation “wouldn’t serve any purpose in this case” because the facts had been heard at trial, and noted that the undersigned granted a judgment of acquittal as to the obstruction count. All of the newspaper accounts link the defendants to organized crime, and some are quite graphic in their description of the extortion scheme and the testimony at trial.
 

 Paragraphs nineteen through twenty-four are subtitled “Law to be Applied” and
 
 *1370
 
 cite a total of nine cases, none of which is binding on the court and only one of which is from a district within the Fifth Circuit.
 
 [1]
 
 The scant “black-letter” statements of law to which the citations apply, however, are valid under this circuit.
 

 Paragraph twenty-five consists of a certificate of good faith of attorney Stephen Finta, who filed the motion on behalf of defendant Cerrella. Mr. Cerrella’s statement that the “allegations are true and correct to the best of his information, knowledge and belief” is notarized, but Mr. Finta’s is not.
 

 THE LAW
 

 Defendant Cerrella’s motion seeks relief under both 28 U.S.C. § 144 and 28 U.S.C. § 455. The motion draws no distinction between the two sections, nor does it cite the subsection of section 455 upon which defendant relies.
 

 Section 144 provides for disqualification “[wjhenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice .. . against him.”
 

 Under section 455(a), a judge shall disqualify himself “in any proceeding in which his impartiality might reasonably be questioned.” Section 455(b)(1) adds that “he shall also disqualify himself . .. [w]here he has a personal bias or prejudice concerning a party.”
 

 The difference between the two sections is that section 144 has certain procedural requirements that must be met by the party raising the issue, but section 455 is self-activating. A motion under section 144 “should also prompt the judge to whom the motion is directed to determine independently whether all the circumstances call for recusal under the self-enforcing provisions of section 455(a) & (b)(1)”,
 
 United States v. Sibla,
 
 624 F.2d 864, 868 (9th Cir. 1980).
 
 Accord, Davis v. Board of School Commissioners,
 
 517 F.2d 1044, 1051 (5th Cir. 1975),
 
 cert. denied,
 
 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976): Section 455 is “self-enforcing on the part of the judge.”
 

 The test as to the level and kind of bias “is the same under both [sections 144 and 455],” in that the judges of the Fifth Circuit “give §§ 144 and 455 the same meaning legally for these purposes, whether for purposes of bias and prejudice or when the impartiality of the judge might reasonably be questioned.” The bias must be both personal and extrajudicial under either statute.
 
 Davis,
 
 517 F.2d at 1052.
 

 In
 
 Phillips v. Joint Legislative Committee on Performance and Expenditure Review,
 
 637 F.2d 1014, 1019 n.6 (5th Cir. 1981),
 
 cert. filed
 
 No. 81-160 (U.S.Sup.Ct., July 23,1981) the Fifth Circuit quoted
 
 Potashnick v. Port City Construction,
 
 609 F.2d 1101, 1111 (5th Cir. 1980),
 
 cert. denied,
 
 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980), in explaining that the distinction between section 144 and section 455 is that “a movant” under section 144 “must allege facts to convince a reasonable person that
 
 bias exists . . .
 
 while under the broader language of section 455, he must show only that a reasonable person ‘would harbor doubts about the judge’s impartiality’.”
 

 The other distinction the
 
 Phillips
 
 court draws is that section 455 “unlike section 144, does not require the judge to accept all allegations by a moving party as true. Indeed, the section requires no motion at all .... If a party could bind a judge by his factual allegations in a section 455 motion, free from the formal requirements and more demanding standard of proof of section 144, the result would be a virtual open season for recusal.” 637 F.2d at 1019 n.6.
 

 The two sections will be considered separately as grounds for this court’s decision that it must recuse itself.
 

 28 U.S.C. § 144
 

 Affidavits filed under section 144 “are strictly scrutinized for form, timeli
 
 *1371
 
 ness, and sufficiency,”
 
 United States v. Womack,
 
 454 F.2d 1337, 1341 (5th Cir. 1972),
 
 cert. denied,
 
 414 U.S. 1025, 94 S.Ct. 450, 38 L.Ed.2d 316 (1973). Applying both that strict standard of scrutiny and the “demanding standard of proof” required by
 
 Phillips,
 
 637 F.2d at 1019 n.6, the court finds that the affidavit filed on behalf of Mr. Cerrella is insufficient to require disqualification under section 144, both for reasons of timeliness and because the allegations, taken as true, are insufficient to convince a reasonable person that extrajudicial, personal bias against Mr. Cerrella actually exists.
 

 It is the task of the trial judge to determine the sufficiency of an affidavit filed pursuant to section 144.
 
 Ex parte American Steel Barrel Company,
 
 230 U.S. 35, 33 S.Ct. 1007, 57 L.Ed. 1379 (1913) (involving the predecessor statute to section 144, which was substantially the same). If the affidavit is sufficient, the trial judge “shall proceed no further.” 28 U.S.C. § 144.
 

 To be sufficient, section 144 requires that an affidavit “shall state the facts and reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown” for late filing. Further, a party may only file “only one such affidavit in any case;” and the affidavit “shall be accompanied by a certificate of counsel of record that it is made in good faith.”
 

 Before moving to the sufficiency of the allegations of bias themselves, the court considers the more technical requirements of section 144. The affidavit filed by Mr. Cerrella is apparently his first in this matter, and although the word “case” as used in the statute is normally construed to apply to a pending case, the court feels the requirement of only one affidavit has been met. Because the court’s holding in this matter rests on other grounds, it does not need to reach the question of whether a certificate of good cause made by an attorney who is a late-comer to the ease, did not represent defendant at trial, and has apparently not filed formal appearance in the matter is sufficient under section 144. Formal appearance may be imputed under general rule 16(F) of the Southern District of Florida which holds that the filing of any pleading constitutes an appearance. Although at least one court has held the certificate of an attorney who did not represent the defendant at trial to be insufficient,
 
 United States
 
 v.
 
 Hoffa,
 
 245 F.Supp. 772 (E.D.Tenn.1965), the court will presume only for the purposes of the motion that the certificate is valid.
 

 The real problem with Mr. Cerrella’s motion under section 144 is its timeliness. The requirement that the affidavit be filed not less than ten days before the beginning of the term in which the matter is to be heard seems to have no relevance to Mr. Cerrella’s situation. In his case, there is nothing pending before the court but his motion to disqualify, with its allegations that he intends to file post-conviction petitions for extraordinary writs.
 

 The reference in the statute to “term of court” is now obsolete in districts where courts sit continually (as in this district), but the timeliness provision still applies, being construed to mean due diligence, or promptly upon receipt of the information that forms the basis of the allegations in the affidavit.
 
 E.g., Rademacher v. Phoenix,
 
 442 F.Supp. 27 (D.Ariz.1977) (Where information set forth in the affidavit had been known to plaintiff for years, the motion for disqualification filed after ruling on a motion to dismiss was untimely, as litigant cannot move for disqualification simply because dissatisfied with the judge’s ruling.);
 
 Hawaii-Pacific Venture Capital Corp. v. Rothbard,
 
 437 F.Supp. 230, 235 (D.Haw.) (Defendant’s motion filed after appeals and remand and on eve of final hearing was untimely when allegations were regarding comments made four years prior to affidavit.),
 
 appeal dismissed,
 
 564 F.2d 1343 (9th Cir. 1977);
 
 California v. Kleppe,
 
 431 F.Supp. 1344 (C.D.Cal.1977) (Affidavit was timely when filed as soon as underlying facts became known to party.);
 
 Samuel v. University of Pittsburgh,
 
 395
 
 *1372
 
 F.Supp. 1275, 1279 (W.D.Pa.1975),
 
 vacated on other grounds,
 
 538 F.2d 991 (3d Cir. 1976).
 

 A 1972 Fifth Circuit case construed the timeliness provision to allow for diligence in
 
 United States v. Womack,
 
 454 F.2d 1337 (5th Cir. 1972),
 
 cert. denied,
 
 414 U.S. 1025, 94 S.Ct. 450, 38 L.Ed.2d 316 (1973). Although the defendant did not file his affidavit until more than one year after his plea of not guilty, eleven months after the judge ruled on his pre-trial motions and two months after the transcript of his co-defendant’s trial, the affidavit was considered timely where he apparently filed it promptly after learning of the facts he alleged in his affidavit and receiving the transcript that backed up his allegations.
 
 Id.
 
 at 1341. However, in that case defendant’s trial was still pending.
 

 Under the predecessor statute to section 144, an affidavit filed after a verdict but before the judge ruled on a motion for a new trial was held unconstitutional. The court held that Congress did not intend that such an affidavit be filed at the post-verdict stage of the case.
 
 Ex parte Glasgow,
 
 195 F. 780 (N.D.Ga.),
 
 aff’d sub nom. Glasgow v. Moyer,
 
 225 U.S. 420, 32 S.Ct. 753, 56 L.Ed.2d 1147 (1912).
 
 See Weber v. Coney,
 
 642 F.2d 91, 92-93, (5th Cir. 1981) (motion to disqualify one judge filed after the case had been transferred to another judge and decided by the second judge was untimely, moot and frivolous).
 

 In the case at hand, there is no matter pending before the court, and the court does not believe section 144, with its explicit provisions as to timeliness, was intended to apply to a possible prospective matter. Alternatively, there is no showing of diligence on the part of Mr. Cerrella in filing an affidavit promptly upon learning facts that, if true, would show the existence of bias or prejudice. The facts involving the actions of the court during and after trial were all before Mr. Cerrella by October, 1980, when his motion to correct sentence was denied.
 
 [2]
 
 His allegations that the undersigned is biased due to the undersigned’s belief that there is a contract on him were known to Mr. Cerrella at the time he took out the contract or, at the latest, at the time he learned that there was an investigation pending, alleged in defendant’s motion to be during March, 1981. The newspaper clippings — provided apparently to show that the court would be aware the newspapers felt Mr. Cerrella is a member of organized crime — are all four to six years old. Further, there is no attempt whatsoever to provide the “good cause” required by the statute for late filings of disqualification affidavits.
 

 Accordingly, the court finds that the affidavit to disqualify is untimely filed, and should be denied for that reason. Consequently, it is unnecessary to consider whether the affidavit satisfies the statutory requirement of sufficiency.
 

 However, the court feels constrained to comment on certain matters raised by the motion, at least inferentially. The affidavit and supporting newspaper clippings filed by Mr. Cerrella implicitly — but not explicitly— seem to allege bias against organized crime members, by making a major point of the fact that Mr. Cerrella was prominently linked to the Mafia. Clearly, if allegations that the court knew defendant was linked to organized crime were sufficient to disqualify a trial judge, no organized crime figures could ever be tried, once their connections were publicized. A “bare allegation” that “inflammatory information had come to the Judge’s attention is far too general to be the basis for disqualification,”
 
 United States v. Roca-Alvarez,
 
 451 F.2d 843, 848 (5th Cir. 1971). In
 
 Phillips v. Joint Legislative Committee on Performance and Expenditure Review,
 
 637 F.2d 1014 (5th Cir. 1981),
 
 cert. filed,
 
 No. 81-160 (U.S.Sup.Ct. July 23, 1981), the allegations in an affidavit for recusal involved rulings and comments adverse to blacks, made by the judge in other cases. Cautioning “against a district judge disqualifying himself on the basis of an allegation of a perceived history of
 

 
 *1373
 
 rulings that a moving party dislikes,” the Fifth Circuit noted that the
 
 Phillips
 
 affidavit, with modifications, “could be used by any black party.”
 
 Id.
 
 at 1021. The
 
 Phillips
 
 case is in point here. Moreover, in order, to be sufficient, an affidavit pursuant to section 144 must allege
 
 “personal
 
 bias or prejudice” (emphasis added). Those portions of Mr. Cerrella’s allegations that allege judicial knowledge of his Mafia connections are insufficient to meet the “personal bias or prejudice” standards of section 144, and would remain so even if there were allegations that the undersigned had a generalized bias or prejudice against organized crime figures. There are no such allegations in Mr. Cerrella’s affidavit.
 

 The court also notes that alleged underworld figures receive considerable news media attention prior to and during any trial in which they are charged with crimes. This court has handled a number of trials of alleged underworld figures. Some have resulted in convictions; some have received acquittals from the jury; others have received acquittals from this judge.
 
 See, e.g., United States v. Della Croce,
 
 502 F.Supp. 1080 (S.D.Fla.1980);
 
 United States v. Erra,
 
 No. 72-314-Cr-NCR (S.D.Fla., acquitted on motion Aug. 3, 1972).
 

 Besides being personally targeted at or against a party, the bias alleged must be of an extrajudicial nature,
 
 Ex parte American Steel Barrel Co.,
 
 230 U.S. 35, 44, 33 S.Ct. 1007, 1010, 57 L.Ed. 1379 (1913) (Predecessor statute to section 144 “was never intended to enable a discontented litigant to oust a judge because of adverse rulings made, for such rulings are reviewable otherwise.”);
 
 In re Corrugated Container Antitrust Litigation,
 
 614 F.2d 958, 965 (5th Cir.) (“[F]amiliarity with defendants and/or the facts of a case that arises from earlier participation in judicial proceedings is not sufficient to disqualify a judge from presiding at a later trial [footnote omitted].”),
 
 cert, denied sub nom. Mead Corp. v. Adams Extract Co.,
 
 449 U.S. 888, 101 S.Ct. 244, 66 L.Ed.2d 114 (1980);
 
 United States v. Serrano,
 
 607 F.2d 1145, 1149-51 (5th Cir. 1979),
 
 cert. denied,
 
 445 U.S. 965, 100 S.Ct. 1655, 64 L.Ed.2d 241 (1980),
 
 quoted in United States v. Caicedo-Asprilla,
 
 632 F.2d 1161, 1166 (5th Cir. 1980) (Comment at one trial about dealing harshly with drug smugglers was insufficient to disqualify the judge from hearing another drug case, as the alleged bias was judicial rather than personal.);
 
 United States
 
 v.
 
 Clark,
 
 605 F.2d 939, 942 (5th Cir. 1979) (The judge who read the pre-sentence report and sentenced defendant to life imprisonment after guilty plea and later allowed plea to be withdrawn would not be disqualified under section 144, as his adverse rulings “do not indicate prejudice” and no grounds were alleged based on extrajudicial prejudice).
 
 [3]
 

 There is an exception to the rule that facts submitted in a section 144 affidavit must show extrajudicial bias “where such pervasive bias and prejudice is shown by otherwise judicial conduct as would constitute bias against the party.”
 
 Davis v. Board of School Commissioners,
 
 517 F.2d 1044, 1051 (5th Cir. 1976). This is not such a case, and the fact that the undersigned gave Mr. Cerrella what defendant considers a stiff sentence and has declined to reduce or “correct” that sentence does not meet the requirement of sufficiency under section 144, as to extrajudicial bias. Not only do those allegations fail to begin to show “pervasive bias,” they show nothing other than a court making rulings in the ordinary course of its judicial business, with some of such rulings being considered adverse by the party.
 
 [4]
 

 
 *1374
 
 For the reasons explained above, the court holds that Mr. Cerrella’s affidavit and motion are insufficient under section 144 as a matter of law. The court must now move to the self-executing provisions of 28 U.S.C. § 455.
 

 28 U.S.C. § 455
 

 As noted above, the tests for the kinds and degrees of bias and prejudice to be considered under sections 144 and 455 are the same,
 
 Davis v. Board of School Commissioners,
 
 517 F.2d 1044 (5th Cir. 1975),
 
 cert. denied,
 
 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976). The facts alleged in an affidavit under section 144, however, must convince a reasonable person that, if true, bias
 
 exists, Phillips v. Joint Legislative Committee on Performance and Expenditure Review,
 
 637 F.2d 1014, 1019 n.6 (5th Cir. 1981),
 
 cert. filed,
 
 No. 81-160 (U.S. Sup.Ct. July 23, 1981), whereas section 455(a) involves a “reasonable man test” in determining whether a judge should disqualify himself because his impartiality
 
 might
 
 be questioned,
 
 Parrish v. Board of Commissioners,
 
 524 F.2d 98, 103 (5th Cir. 1975) (en banc),
 
 cert. denied,
 
 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976).
 

 While the relationship between section 455(a), which provides for disqualification where “impartiality might reasonably be questioned” and section 455(b), involving “personal bias and prejudice” is a bit murky, at least one circuit has held that section 455(b)(1) “simply provides a specific example of a situation in which a judge’s ‘impartiality might reasonably be questioned’ pursuant to section 455(a).”
 
 United States v. Sibla,
 
 624 F.2d 864, 867 (9th Cir. 1980). In the same case, the Ninth Circuit held that the “test for personal bias or prejudice in section 144 is identical to that in section 455(b)(1).”
 

 The bulk of cases involving disqualification mention section 455, but center on the more formal requirements of section 144. However,
 
 Potashnick v. Port City Construction Co.,
 
 609 F.2d 1101 (5th Cir. 1980),
 
 cert. denied,
 
 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980), sets the Fifth Circuit standard for section 455 disqualification. In that case, the judge’s father was a senior partner in the law firm representing the plaintiff in a case pending before the judge; plaintiff’s chief trial counsel was a former law partner of the judge, with whom he still had business dealings, and the law firm representing plaintiff handled other matters for the judge. Although there were no allegations of actual bias, the Fifth Circuit held that “[bjecause [section 455(a)] focuses on the appearance of impartiality, as opposed to the existence in fact of any bias or prejudice, a judge faced with a potential ground for disqualification ought to consider how his participation in a given case looks to the average person on the street.”
 
 Id.
 
 at 1111. The Fifth Circuit held that the judge should have been disqualified.
 

 CAN A PARTY ACHIEVE RECUSAL BY HIS OWN CONDUCT?
 

 The circumstances of this case are unique: a defendant persists in a plan to kill the sentencing judge, despite a grand jury investigation of his criminal scheme. He is apparently convinced he can “pull off” the murder with impunity despite the fact that law enforcement authorities will continually monitor his activities until he cannot operate illegally. The question of whether to permit a wrongdoer to achieve recusal by his own criminal acts will not be addressed specifically by the court.
 

 In general, courts have held that a party cannot effect recusal of a trial judge by the party’s own actions; but those cases usually involve prior statements made by the party that are critical of the judge, rather than the criminal activity at issue here.
 
 United States v. Bray,
 
 546 F.2d 851 (10th Cir. 1976) (Defendant’s accusation that judge had taken a bribe, as well as defendant’s author
 
 *1375
 
 ship of article calling for impeachment of the judge and his instigation of petition drive against the judge were insufficient under section 144, although judge would be disqualified for other reasons on retrial.);
 
 United States
 
 v.
 
 Garrison,
 
 340 F.Supp. 952, 957 (E.D.La.1972) (Movant’s press release denouncing judge’s ruling in earlier case was insufficient to require disqualification.);
 
 United States v. Fujimoto,
 
 101 F.Supp. 293, 296 (D.Haw.1951),
 
 motion for leave to file petition for writ of prohibition or mandamus denied, sub nom. Fujimoto v. Wiig,
 
 344 U.S. 852, 73 S.Ct. 102, 97 L.Ed. 662 (1952) (Attack on judge in defendant’s newspaper was insufficient. “Only a psychic pleader could allege that because a defendant has published uncomplimentary statements concerning a judge, the latter will be unable to give his critic a fair and impartial trial.”).
 
 But see, Marshall v. Georgia Pacific Corp.,
 
 484 F.Supp. 629 (E.D. Ark.1980) (Remarks by attorney in effect accusing judge of racism were cause for judge to recuse herself in all future cases involving that attorney, as “[tjhese remarks were of the nature that they could not be erased from the court’s mind, nor soon forgotten,”
 
 Id.
 
 at 637.)
 

 In one memorable case,
 
 In re Union Leader Corp.,
 
 292 F.2d 381 (1st Cir.),
 
 cert. denied,
 
 368 U.S. 927, 82 S.Ct. 361, 7 L.Ed.2d 190 (1961), the motion for recusal came well into the proceedings, and was based partly on the fact that the judge had been criticized many times in a newspaper owned by one of the parties. In commenting on his refusal to recuse, the judge said: “[I]t rather surprises me that a person has any status at the end of the first half of the game to suggest that the referee, who was qualified at the beginning, is disqualified in the middle because in the meantime the player has been cursing the referee outside of court.”
 
 Id.
 
 at 388. The First Circuit upheld the trial judge’s refusal to recuse, noting that it had “found no case which suggests that an affidavit must be ruled to be sufficient simply because it might be natural for a judge to have resented something said about him. It is conceivable that an attack could be so vicious that we would have to presume that the judge had been affected, but ... that situation will be rare.”
 
 Id.
 
 at 399. In this case the player has done more than “curse the referee outside of court.” This seems to be one of those rare cases in which the attack rises to the level that the “man in the street” would presume the judge’s impartiality would be affected by defendant’s conduct.
 

 This court had concluded that recusal was necessary under section 455(a) but the release of the opinion in
 
 United States v. Phillips,
 
 664 F.2d 971 (5th Cir. 1981), has caused the court to re-examine its conclusion. In
 
 United States v. Phillips,
 
 Judge King of this district was advised by Strike Force attorneys during the trial that “certain defendants had plotted to disrupt the trial proceedings, intimidate witnesses, and attempt to kill the judge himself.”
 
 Id.
 
 at 1001 (footnote omitted). In a sense the judge participated in the investigation in
 
 Phillips,
 
 a situation unlike the instant one. Additionally, on the record, Judge King made several statements in court, footnote 43, indicating that the threats, which Judge King had heard via tape recordings, had not been totally ignored by the trial judge. There is nothing in this record to indicate any expression by the trial judge in or out of court in response to the situation involving Mr. Cerrella.
 

 Consequently, the situation in
 
 Phillips
 
 presents one where defendants can show more clearly some arguable points to justify recusal than in the instant case. The Eleventh Circuit affirmed Judge King’s refusal to recuse himself, and at first blush
 
 Phillips
 
 would seem to be controlling the instant matter.
 

 However, it is the opinion of this court that the principles of
 
 Potashnick
 
 apply more closely than the result in
 
 Phillips.
 
 In
 
 Phillips,
 
 the trial judge was in the course of a lengthy five-months’ trial. It contained innumerable trial management problems, bribery of a juror, and many difficulties set
 
 *1376
 
 forth more fully in the District Court’s opinions and the Court of Appeals’ opinion.
 
 [5]
 

 In this case the trial is over and the appeal is completed; the motions for reduction and correction have been ruled upon. For some reason known only to the defendant, the threat and plan to kill the trial judge have surfaced at this time and stage of these proceedings. The appearance of partiality to a “man in the street” on which the court grounds its recusal has an extrajudicial rather than a judicial origin.
 

 In the final analysis,
 
 Potashnick
 
 rules this court’s decision. Although there is no pending case, and although this court might determine, as some other courts have done, a timeliness requirement applicable to section 455 that has not been met,
 
 [6]
 
 the court must consider how its participation would look to the person in the street, not with knowledge only of the allegations raised in Mr. Cerrella’s motion, but with knowledge of the matter.
 

 Beyond all legal argument, beyond all case precedent, a reasonable person in the street, faced with a judge sitting on post-conviction matters that could free from incarceration a man who has put out a “contract” on the judge, would have to harbor doubts as to the judge’s impartiality.
 

 For those reasons, and for no others, the court will disqualify itself, under 28 U.S.C. § 455(a), from all further matters in which Mr. Cerrella is a party.
 

 [1]
 

 . The motion was filed after the formation of the new Eleventh Circuit, but Fifth Circuit law prior to October, 1981, is binding on this court and provides, of course, the legal authority for this decision, written three months after the new circuit opened and before it has developed a body of law regarding disqualification.
 

 [2]
 

 . Of course, the actions the court took as part of its judicial duties would not be sufficient to meet the “extrajudicial” requirements of section 144 anyway.
 

 [3]
 

 . For a list of over a dozen cases holding that bias or prejudice in disqualification situations must not stem from prior judicial familiarity,
 
 see In re Corrugated Container Antitrust Litigation,
 
 614 F.2d 958, 964 n.12, 965 n.17 (5th Cir. 1980),
 
 cert. denied sub nom. Mead Corp. v. Adams Extract Co.,
 
 449 U.S. 888, 101 S.Ct. 244, 66 L.Ed.2d 114 (1980).
 

 [4]
 

 . The court notes in passing that at the very time Mr. Cerrella alleges bias due to the court’s knowledge of his alleged organized crime connections, the court entered a judgment of acquittal as to one count of the indictment.
 

 The court admits that it may consider the crime Mr. Cerrella was convicted of — that of strong-arm extortion — to be a more heinous crime and more corrosive to society than perhaps do
 
 *1374
 
 some other judges. This court does consider it one of the most serious crimes by far and one that is particularly insidious because an essential factor is the fear induced in the victim, particularly when that fear is aimed at preventing the victim from reporting a crime to the authorities.
 

 [5]
 

 .
 
 United States v. Phillips,
 
 664 F.2d 971 (5th Cir. Dec. 28, 1981);
 
 United States v. Platshorn,
 
 488 F.Supp. 1367 (S.D.Fla.1980);
 
 United States v. Meinster,
 
 488 F.Supp. 1342 (S.D.Fla.1980);
 
 United States v. Meinster,
 
 484 F.Supp. 442 (S.D.Fla.1980);
 
 United States v. Grant,
 
 476 F.Supp. 400 (S.D.Fla.1979);
 
 United States v. Meinster,
 
 475 F.Supp. 1093 (S.D.Fla.1979).
 

 [6]
 

 .
 
 See United States v. Daley,
 
 564 F.2d 645 (2d Cir. 1977),
 
 cert. denied,
 
 435 U.S. 933, 98 S.Ct. 1508, 55 L.Ed.2d 530 (1978);
 
 United States
 
 v.
 
 International Business Machines Corp.,
 
 475 F.Supp. 1372, 1377 (S.D.N.Y.1979). (Failure to infer a timeliness requirement in section 455 “would authorize disgruntled litigants to bypass the strictures of section 144 by invocation of section 455 far along in a proceeding, after testing the temper of the court.”)